**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Plaintiff,**

v.

**J. William LEWIS, et al., Defendants.**

**Civ. A. No. 90–AR–1107–S.**

United States District Court,
N.D. Alabama, S.D.

Jan. 22, 1991.

See also 753 F.Supp. 345.

Craig A. Alexander, Duncan Bissell Blair, Mary Beth O'Neill, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for plaintiff.

Edward L. Hardin, Jr., Hardin, Taber & Tucker, Birmingham, Ala., for defendants.

MEMORANDUM OPINION

ACKER, District Judge.

This case arises out of the following undisputed facts:

1. Lewis, Martin, Burnett & Dunkle, P.C., a law firm in Birmingham, Alabama, had an ERISA-governed group health and medical benefit plan administered and underwritten by Blue Cross and Blue Shield of Alabama (Blue Cross).

2. As an employee of Lewis, Martin, Burnett & Dunkle, P.C., J. William Lewis and his family were covered under the said plan when on December 28, 1988, his wife, Lorraine, and his daughter, Dierdre, were badly injured in an automobile accident.

3. The language of the Blue Cross insurance policy then existing under the plan had been amended in 1985 to introduce a so-called subrogation/reimbursement provision by the terms of which, if the provision is enforceable, Blue Cross was entitled to recover what it paid to or for the benefit of its insureds in medical expenses from any third-party tortfeasor who had proximately caused the injuries sustained by the insureds out of which the medical expenses

paid by Blue Cross arose. The precise pertinent policy language is as follows:

> If we pay or provide any benefits for you under this Contract we are subrogated to all rights of recovery which you have in contract, tort, or otherwise against any person or organization for the amount of benefits we have paid or provided. That means that we may use your right to recover money from that other person or organization.
>
> Separate from and in addition to our right of subrogation, if you or a member of your family recovers money from the other person or organization for any injury or condition for which benefits were provided by us, you agree to reimburse us from the recovered money for the amount of benefits we have paid or provided. That means that you will pay to us the amount of money recovered by you through judgment or settlement from the third person or organization up to the amount of benefits paid or provided by us. Our right to reimbursement comes first even if you are not paid for all of your claim for damages against the other person or organization or if the payment you receive is for, or as described as for, your damages (such as for personal injuries) other than health care expenses or if the Member recovering the money is a minor.

4. At the time Blue Cross filed its complaint in this court, Blue Cross had paid at least $60,415.32 for medical services rendered to Lorraine and at least $27,336.25 for medical services rendered to Dierdre.

5. On September 15, 1989, Government Employees Insurance Company, the insurer of the third-party driver who had negligently caused the accident, filed an action in the Circuit Court of Jefferson County, Alabama, and paid into that court the sum of $300,000.00, which represents the policy limits. GEIC prayed for an adjudication of the respective rights of any and all claimants to the said $300,000.00 and itself disclaimed any right to it.

6. Blue Cross filed a claim in the said Jefferson County civil action pursuant to its subrogation/reimbursement agreement.

The Lewises claimed the entire $300,000.00 and opposed Blue Cross' claim on several grounds, including the Lewises' contention that the federal court has exclusive jurisdiction over the Blue Cross' claim. The Circuit Court of Jefferson County granted the Lewises' motion to dismiss Blue Cross' claim upon a finding that the federal courts had exclusive jurisdiction. For procedural reasons, the Supreme Court of Alabama thereafter denied Blue Cross' petition for a writ of mandamus, ordering the money in the Jefferson County Circuit Court disbursed to the Lewises. *Ex parte Lewis*, 571 So.2d 1069 (Ala.1990). Justices Maddox and Houston dissented, disagreeing with the majority's procedural rationale, and concluding that the trial court was incorrect in having concluded that the federal court has exclusive jurisdiction over Blue Cross' subrogation/reimbursement claim. This dissent refers to the action in this court which had been filed by Blue Cross while its petition for writ of mandamus was pending in the Supreme Court of Alabama. The majority agreed with the dissenters' conclusion that jurisdiction was not exclusively in the federal court and that the Circuit Court of Jefferson County did have jurisdiction, but in view of the majority's dispositive procedural ruling, this expression was *dictum.*

7. The Lewises, who are defendants in this action brought by Blue Cross, have challenged this court's jurisdiction, creating the somewhat anomalous and unique situation of their having successfully challenged Blue Cross' claim in the state court by contending that the federal court has exclusive jurisdiction while now taking the opposite position. Assuming *arguendo* that their jurisdictional challenge is unavailing, the Lewises defend on the merits by asserting that the subrogation/reimbursement agreement violates the law and public policy of Alabama and is therefore unenforceable and, if not invalid on its face, is invalid because the language here invoked was not approved by the Department of Insurance of the State of Alabama in compliance with proper procedure and "due process".

### The Procedural Posture

Both plaintiff and defendants have filed motions for summary judgment pursuant to Rule 56, F.R.Civ.P., and defendants have filed a motion to dismiss pursuant to Rule 12(b)(1), F.R.Civ.P. Although the alternative defense by the Lewises attacking the procedure by which the subrogation/reimbursement clause was purportedly approved by the Department of Insurance is hotly contested, this court finds that the dispositive facts are not in dispute and that the factual dispute over the procedures before the Department of Insurance does not prevent a summary disposition.

### Conclusions of Law

As strange as it may seem after this much time has passed since the complaint was filed, this court seriously doubts that it has subject matter jurisdiction.

When this action was filed on May 31, 1990, *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), had not been decided. *FMC* was not decided until November 27, 1990. Shortly after the instant action was filed, another district court decided *Provident Life & Accident Ins. Co. v. Linthicum*, 743 F.Supp. 662 (W.D.Ark.1990). That court found that a state law which purported to operate to preclude an ERISA plan administrator from enforcing subrogation rights contained in the plan document was preempted by ERISA, 29 U.S.C. §§ 1144(a) and 1144(b)(2)(A) and that ERISA permits the enforcement of such a subrogation agreement despite state law to the contrary. Understandably, that court expressed no doubt about its jurisdiction.

But then along came *FMC*, in which the Supreme Court dealt directly with the issue of alleged ERISA preemption of a state law regulating the alleged subrogation rights of a plan fiduciary. Seven of the justices, with one justice abstaining and one dissenting, held:

> Pennsylvania's antisubrogation law prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party.

> \* \* \* \* \* \*

There is no dispute that the Pennsylvania law falls within ERISA's insurance saving clause, which provides, *"[e]xcept as provided in [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance,"* § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) (emphasis added). Section 1720 directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain. See *Metropolitan Life [Ins. Co. v. Massachusetts]*, 471 U.S. [724], at 740–741, 105 S.Ct. [2380] at 2389–2390 [85 L.Ed.2d 728 (1985)]. It does not merely have an impact on the insurance industry; it is aimed at it. See *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). This returns the matter of subrogation to state law. Unless the statute is excluded from the reach of the saving clause by virtue of the deemer clause, therefore, it is not pre-empted.

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are preempted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. *On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance*

*company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.*

111 S.Ct. at 408–409 (emphasis supplied).

■ It is clear that *FMC*, if it stands for anything, stands for the proposition that the rights of an insurance company like Blue Cross, even though it is the fiduciary or administrator of an ERISA-governed plan, remains under the regulation of the state as the state laws relate to subrogation or reimbursement rights because of ERISA's so-called "deemer" clause and "saving" clause. Lewis, Martin, Burnett & Dunkle, P.C.'s plan was not a self-insured plan. Because Blue Cross invokes this court's jurisdiction only on the basis of the alleged existence of a federal question, and because no federal question ever existed except the question which first appeared but has evaporated in the light of *FMC*, this court in all probability lacks jurisdiction.

■ Assuming *arguendo*, either that a federal question of statutory interpretation exists sufficient to confer jurisdiction on this court or that this court has obtained the right to speak by some sort of reverse judicial estoppel created by the Lewises themselves, nevertheless the law of Alabama controls on the merits because it is not preempted. And the law of Alabama here applicable was unequivocally stated by the Supreme Court of Alabama on December 28, 1990, in *Powell v. Blue Cross and Blue Shield of Alabama*, —— So.2d —— (Ala.1990). This court would not have learned of *Powell* as soon as it did without counsel for Blue Cross, in fulfilling his obligation as an officer of the court, having brought the *Powell* decision to the attention of this court by letter of December 31, 1990, wherein counsel said:

Enclosed please find a copy of an opinion (*Powell v. Blue Cross and Blue Shield of Alabama*) released by the Supreme Court of Alabama last Friday, December 28. The result in *Powell* is not favorable to Blue Cross. Nonetheless, because the decision may have an impact on your review of the pending summary judgment motions, I am providing you with a copy of it.

My initial reaction to the decision is that the plurality opinion (Justices Hornsby, Shores, and Adams) unconstitutionally impairs the contractual obligations that exist between Blue Cross and its subscribers. At this point, it is undetermined whether Blue Cross will seek a rehearing or perhaps file a petition for writ of certiorari with the United States Supreme Court.

Subsequently, counsel informed the court that no application for rehearing was filed and that no petition for certiorari is planned. In *Powell*, the Supreme Court of Alabama spoke clearly and directly to Alabama's medical benefits insurers on the subject of subrogation under circumstances identical to those in this case and held that "the insurer is not entitled to subrogation unless and until the insured has been made whole for his loss". —— So.2d at ——. The Supreme Court of Alabama made no exception for subrogation/reimbursement clauses approved by the Department of Insurance.

If the Circuit Court of Jefferson County has not already, either expressly or impliedly, found that the Lewises have not been made whole by the $300,000.00 paid to them by the third-party tortfeasor's insurance company, it is for a court other than this court to make the determination as to when and if the Lewises have been made whole. The barest theoretical opportunity exists for Blue Cross' subrogation/reimbursement clause ever to come into play. From a full reading of *Powell*, the question presented by the parties in this case becomes academic on the undisputed facts. Under the circumstances, defendants' secondary or alternative contentions are rendered moot.

An appropriate, separate order granting defendants' motion for summary judgment

and denying plaintiff's motion for summary judgment will be entered.